Here to hear you, this Honorable Appellate Court for the Second Judicial District is now back in session. The Honorable Robert D. McClaren presiding. Please be seated. Call the case, please. Yes, sir. Your Honor, the court will finally place on the docket, page 2-25-0168, People of the State of Illinois, plaintiff's appellant, the 3-3-D Bedient, defendant's appellee. Arguing on behalf of the appellant, Ms. Janet Siebert. Arguing on behalf of the appellee, Mr. Fletcher, the appellant. Ms. Siebert, you may proceed. May it please the court, counsel, my name is Janet Siebert on behalf of the people. The trial court misinterpreted and misapplied the fear of crime exemption to the eavesdropping statute. This court should reverse the trial court's order suppressing the recorded phone call between the victim and defendant. Also, this court should reverse the trial court's order suppressing the victim's testimony about the phone call. This case presents the clearest example of the fear of crime exemption to the eavesdropping statute. Here, the victim was a repeat victim of domestic violence at the hand of defendant, and she finally decided to do something about it. The victim, while in a conversation with defendant on the phone, decided to record the conversation and specifically confront defendant about his abuse during that conversation and get him to confess to his most recent act of domestic violence against her. The recorded call shows that the phone call was unequivocally made to obtain defendant's confession about confession to beating her. The trial court's conclusion that the exemption did not apply and more problematic that the defendant's confession must be suppressed requires reversal. There is no dispute about the first two factors of the fear of crime exemption. The victim was a party to the conversation, and she knew, as she testified, that defendant had committed a crime of domestic violence against her. And she confronted him about it specifically on this phone call. In the phone call, she referred to the most recent act of domestic violence by saying... Did the conversation prove anything? The trial court did not allow it into evidence, didn't admit it. We've seen what totally was proffered. What does it establish such that it's even important enough or of value enough to appeal? Your Honor, the question here is very narrow. It's strictly about admissibility. This piece of evidence was admissible. Does it have to be admissible to the charge defense, or can it be any state? No, Your Honor. The language of this statute itself just says a criminal offense and not the charge defense. It says committed, about to be committed, or something. Let me see it. Doesn't it say something to that effect that the E's dropping? Let me see. I have a statute right here. Who is part of the conversation under reasonable suspicion, another party to the conversation? Is committing, is about to commit, or who has committed a criminal offense against the victim? Right? Correct. So that's why I'm asking you. In this case, the court said that there was evidence of the charge defense. Does it have to be evidence of the charge defense that she's trying to get information? Your Honor, based on the plain language of the statute, no. It just says of a criminal offense and not a charge defense. So the sole dispute here is regarding that third factor of the fear of crime exemption. To quote, there is reason to believe that evidence of the criminal offense may be obtained by the recording. Now, defendant's statements during the phone call are irrelevant in determining whether this evidence was admissible. The trial court solely focused on defendant's statements and saying that it wasn't admissible. However, the relevant evidence was the victim's testimony of the reasons why she recorded the phone call. My concern is to what end is this appeal being made? What are you attempting to get into evidence that is going to make or probably break your case? Your Honor, again, this is solely about the admissibility of the evidence. The weight that the trial fact gives to the evidence is a question not for this appeal, but excuse me, let me be more clear about what I'm trying to say. We're solely focused on whether this evidence is admissible. Let me interrupt you and ask. You're saying that this is only about admissibility? That's what I thought you just said, didn't you? Yes. Whether this evidence was admissible. Okay. Isn't one of the most basic premises of admissibility relevance? If it's not relevant, it's not admissible. Right? Of course. Okay. My question to you is what does the record reflect was evidence that was relevant? My understanding is he didn't admit to a thing. Did I misunderstand something? Did he say, yeah, I did it because she was a dirty rotten rat? What, you know, if it's not relevant, why are we here? Your Honor, the objection at trial was regarding the eavesdropping statute. Defendant, it was not a relevance objection. So defendant objected based on a violation of the eavesdropping statute. The people responded that the fear of crime exemption applied, and that's how the arguments proceeded. So maybe it was admissible, but the point is, was it also relevant? Because if it's not relevant, it's not admissible, and we have term on other grounds. Your Honor, I understand what you're saying. You understand where I'm coming from? I understand where you're coming from. I'm just highlighting the fact that the objection was not based on relevance. The trial court's finding was not one based on relevance. It was based solely on whether this fear of crime exemption applied. They said it didn't, but based on the record and the testimony of the victim, it absolutely applied and should have applied. After it was admissible, the trial court could then, of course, weigh, give whatever weight they wanted to to this evidence. If they found that it didn't have little lead to it, that's fine, but we're solely here to discuss the admissibility of this evidence based on the fear of crime exemption. But, I mean, that's what I was going to say to you before when you were addressing Justice Shostak. I am not aware of any piece of evidence, if you're going to call it evidence, that can be considered just on a single issue other than we've got to start with relevant and material to the matter at hand. And if it's not, see, I would start in a different order. Was this relevant or material? I didn't see any admission. I didn't see anything that talked about this charge. She said, yeah, I did it in the past, which wouldn't, I don't think, necessarily be allowed under these circumstances. But if we can't get past relevance or materiality, I don't even know why we're considering the issue you're talking about. So if the fear element is there and you feel it should come in, then it can come in, like you said, and then later, before it can come in, you have to determine whether it's relevant or material. So it's not like you can go, oh, it can come in, I'm restropping, and then the judge can weigh it later. That's what I think I hear you saying, correct? Your Honor, just to be clear, what I'm trying to say is that the relevancy wasn't the issue, so I'm not trying to – But relevancy is always the issue, isn't it, in admitting evidence? Yes, but I'm saying that that wasn't the objection here. So we've, I guess, presupposing that it was relevant. Now we're at the second stage where they were solely talking about whether the exemption applied. My apologies if that wasn't clear. If your Honors are unsure about how this could be relevant, it is relevant. Relevancy is, quite honestly, low bar, it's a low threshold. Here, she does specifically refer to specific abuse that she incurred at this, during this current domestic violence situation, specifically the crack jaw. She says it multiple times. But he never says anything about that. He said, she said at one point, you laid hands on me. He said, yeah, I, yes, but nobody else, only you, or something to that effect. Kind of admitting that he has laid hands on her. At what point, we don't know. But we do know because she specifically says, right before he says that, you cracked my jaw. We have evidence, testimony and physical photographs of all three domestic violence situations. Two were already admitted as other crimes evidence. There's testimony of that that had different, and the photographs show different injuries. Like to her neck, I think one was a bruised lip. But in this particular case, the crack jaw, we have multiple photos of that. I believe it's 789, the evidence, that shows the crack jaw. That's why we know she's referring to this specific incident. This also occurred a month before, or sorry, excuse me, a month after this current incident. And immediately after she got this, she recorded this phone call, she went to the police to report the incident. The two prior incidents occurred three years before. So yeah, he says, I think he says, hell yeah, only you in the past, to her response. But it's directed, she confronted him specifically about this particular incident. He doesn't deny it. He admits it. He's laughing about it. Let me ask you, what do you make of the trial court judges ruling that this is fruit of the poisonous tree? And I think she's sui sponte came up with that in her ruling. Your Honor, that was complete error. Even defendant of this appeal does not dispute that. That had no relevance to this case. Fruit of the poisonous tree typically regards law enforcement, as you can see in Davis and Harris. Didn't she say something? I was hoping that he would say something that I might be able to use. That's a pretty weak argument for the prefatory basis for a reasonable excuse for recording a conversation clandestinely. Your Honor, she did more than just hope. She didn't just randomly record this conversation and wait around to hear him confess to something he did a month prior. Like I've been saying, she specifically asked him, referred or confronted him about this specific abuse. She says it multiple times. You beat me. You beat the mother and child. You cracked my jaw. She says it multiple times to get him to confess. She had a reason to believe that evidence of this crime may be obtained by this recording because she confronted him about it. And then he didn't deny it. He admits to hitting her. I think you just described reasons why she did what she did. And I thought I was referencing things that she thought he might do that would result in a material and a relevant admission or statement. So you see the difference between the belief that she's going to catch him in something as opposed to thinking that he will say something if she just talks to him? Because when you start saying that she talked about the damage that he did to her, she's the one that's broaching the subject, not him. But again, Your Honor, the exemption calls for that she has a reason to believe that evidence of the crime may be obtained. She had a reason to believe that evidence of the crime may be obtained. She has to know that before the call, of course, it's not outcome determinative. She went in, recording the call, and confronting him with this abuse to get him to admit to it. So in that way, the exemption was fulfilled. And it was objectively reasonable because she specifically took these steps to actively try to get him to admit to this particular abuse that occurred a month before. So your position is that this conversation was not in violation of the EASE drop-in law, correct? Correct, based on the fear of crime exemption. Did the trial court make the finding that her belief was reasonable? Because they found that the exemption didn't apply based on the third factor, then they also made the finding that they did not believe she, this was reasonable. Well, there's two aspects. I started with relevancy. We added materiality. And then I approached the topic, which was admissibility and what is the basis to evaluate whether or not it's admissible. And you, we discussed it. And assuming that it is admissible, can you tell us why it's admissible? If the fact that it is, quote-unquote, a viable conversation that may be submitted contrary to the exemptions or the prohibitions of the EASE drop-in statute, what was relevant or material to what was contained in the conversation that would have any meaningful purpose to be admitted into evidence for a trial or fact to consider the issues in this case? Yeah, I see that my time is up. May I answer? We have all day. Oh, do we? Well, I have all day. Let's put it that way. Your Honor, if I understand your question correctly, it's, again, we're focused really on such a narrow issue about the admissibility. And the testimony that she gave was sufficient for this exemption to apply, being that she recorded this. She already knew that the crime had been committed against her. She believed that she could get defendant to confess to these crimes against her by confronting them with the abuse. The fact that she thought she could get him to say something doesn't mean that she did. So I'm asking you, assuming that she thought she could get something from him, what did she get from him that would be admissible? Well, your Honor, she got him admitting that he hit her. That's what she got. But, again, that's the outcome of the conversation. And this exemption is not looking at the outcome. It's looking at why, her reason to believe to record the conversation. Didn't the trial court say something in effect that he may have admitted to hitting her, but he didn't give a date, time, place, or whatever? Or it could have been so long ago that it really doesn't have any probative value in this case. And if that's the case, then it's not relevant. And if it's not relevant, it shouldn't be admissible under any circumstance, whether it's an exemption under the eavesdropping act or otherwise. And so that's the reason why I asked you at the very beginning, which is we can shortcut. We can go from the end of the line to the front of the line, and you can answer the question, which is, we've solved the problem. You want, now tell us why it should be admitted to evidence because it's relevant and material. And that's where your case is at the weakest. And that's why I asked you the question. I'd like to get to the nub of the problem. Can you give me a rationale for why it's admissible because it's relevant? Yes, Mr. Honor. To start at the beginning, again, relevance is a low bar. This is relevant because this, again, this occurred, this act of domestic violence occurred about a month later. The victim is talking on the phone with the defendant. She asked her boss to record the conversation. She starts confronting him with specific instances of abuse, particularly this one, where she refers to her cracked jaw or refers to him cracking her jaw. We know that that doesn't refer to the other instances that have been already admitted because those happened three years ago, and those have specific injuries associated with them that do not refer to the cracked jaw. So we know this cracked jaw is only referring to this specific instance. And since we know that, defendant responds, yeah, I have hit you, in response to her saying, you cracked my jaw. So just based on that alone, it is relevant. And because it's relevant, then we move on to the fear of crime exemption. And under the fear of crime exemption, she testified to why she had a reason to believe evidence of the crime might be recorded or may be recorded or may be obtained. Excuse me. Any other questions? No. I have one other question. I mean, there is an issue as to when you, the lateness in disclosing this evidence, that I don't think, you know, in a reasonable time in advance of trial, you kind of waited a while to disclose this, didn't you? Did the state in this case? You're asking me about when they decided to disclose these exhibits to defense counsel?  And to the court. As far as I understand, it was disclosed before, but there was no, there was no, like, pre-trial rulings on the admissibility, if that's what you're asking. Right, right. There wasn't, but I don't believe it was a surprise that this evidence was coming in. Defense counsel made the objection at trial rather than pre-trial. Was it known to them at pre-trial? As far as I know, yes. Thank you. Are there any other questions? Are you aware that we can affirm on any basis contained in the record? Yes. Okay. I have no further questions. You'll have an opportunity to make rebuttal. All right. Thank you. Thank you. Mr. Hamill? Good afternoon, Your Honors. My name is Fletcher Hamill, and I represent the Defendant Appellee at the Beachy Petty Inn. This case is about relevance. And one thing that was not, I'm not going to go through everything because I think Your Honors are obviously quite familiar with the problems in this case, but one thing that did not get brought up in the United States argument here is that the judge made a factual finding in this case that the defendant's statements were too vague and too general to be considered admissions to the charge of defense. And that finding gets reviewed under an abusive discretion standard. So Your Honors can't reverse that finding unless it's so unreasonable that no reasonable trier of fact would agree with it. Are you saying that there are two aspects to his finding? One is it's not exempt, and two, it's not relevant. I think so. I think what really is happening here is the judge had, I think the judge made factual findings and the judge made a legal conclusion. And those two things don't necessarily combine into one cohesive legal point. But that's not the standard of review. Because this is an abusive discretion case, and Your Honors can review, obviously, you review the result, not the reasoning. Well, it's an abusive discretion, and it's also a question of law. The question of law is whether or not this fits the template of an exempt conversation that may be permissibly recorded. And then once that threshold issue is determined, and if it was determined in so far as, yes, it's admissible, then we would determine whether or not the trial court actually admitted it, what the nature and extent of its admission, how he interpreted it or she interpreted it, and then we would make a finding relative to both abusive discretion as to the admissibility, and then we'd make a determination of manifest weight relative to what the findings were that the trial court derived from the evidence. So it's actually three. True, but all of this can be short-circuited if it's not relevant. Yes, that's true. So that's why I like to start with relevance because of that. And for an additional reason is that the relevance issue pertains to both the recording of the conversation itself and to any proposed testimony by SM about that recording, and does so independently of anything to do with fruit of a poisonous tree. Yes, tell me about that. Do you think that is fruit of a poisonous tree? The Supreme Court did rule in Davis that this fruit of a poisonous tree does not apply to these dropping sections. That's right. So fruit of a poisonous tree is not a reason to bar SM's proposed testimony. What about the fruit of a poisonous bush? I haven't heard about that one. I have not. Okay. This is the danger after lunch for all of you. Yeah, right. Anyway. Okay, so the judge's finding with regard to relevance is not unreasonable. The defendant did not give a date or a time. He did not give any kind of description of what he was admitting to doing other than saying, basically, I laid hand on you in the past is essentially what he was saying. And a reasonable trier fact could agree with the judge that that could have referred to this incident. It could have referred to any of these other two incidents. It doesn't have to refer to the specific incident. Okay, so in theory, in theory, the state could have admitted, it could have referred to the past incidents if the state had offered it under 115.7.4. The state did file a motion to admit some evidence under 115.7.4, but they did not include this evidence in that motion. And 115.7.4 does specifically require a specific notice about what evidence the state is planning on bringing in under that statute. So, yeah, if the state had done that, this would be a different matter. Prior to that, basically. Right. But since the state did not do that, they can't go back and do it now because it had to be free trial. So it can't be relevant to the prior offenses because of that. And the judge ruled that it wasn't relevant to this offense because it's too vague and generalized. Which, incidentally, vague and generalized are the words that the judge used here. It's almost the exact same words that the Supreme Court used in Morgan to define the relevant standard. In Morgan, it's uncertain and speculative. So the judge's ruling can be affirmed on that ground, and it should be affirmed on that ground. And if it is, then, you know, the eavesdropping statute and the weight that the judge might have given to the evidence, you just don't need to reach that because the evidence is not relevant. Alternatively, well, actually, one more point on the relevance question is it's worth remembering that this is a bench trial. And so the judge who made this ruling is the ultimate trier of fact in this case. So there isn't some jury out there that, you know, this evidence is going to be withheld from, that might have interpreted it differently than the judge did. This is your trier of fact here telling us exactly what she thinks of this evidence. And she doesn't think much of it. And there's, you know, and there's no reason to reverse that. So, you know, for those reasons, your Honor should affirm on relevance grounds. And that would be for both the recording itself and the testimony regarding, or the proposed testimony regarding the conversation. Alternatively, if your Honors do reach the eavesdropping statute and the fair crime exception, the problem here is that there's just a dearth of evidence on the part of the State. The State has to prove that there was reason to believe that the recording would yield evidence of a crime. Or put in more practical terms, the defendant would say something incriminating. And that's simply not. He did say something incriminating, but they didn't file any pretrial notices. I mean, it could have come in for a history of domestic violence, right? With the proper pretrial notice, it may have been admissible for that. Right. But the fact that he did say something incriminating does not necessarily mean that there was reason to believe he would beforehand. And the only evidence that the State offered with regard to the moment in time that SM made the decision to record was evidence of SM's hopes and intent. And I think the eavesdropping statute requires more. If you look at the cases, the cases that the State relies on, there's something like a history. For example, in Olmquist, you have the history of the wife interfering with the husband's telephone visitation. So she's done it before. He thinks she'll do it again. So he records the conversation. In Carroll, it's actually in the conversation itself where the wife overhears the plaintiff making threats and yelling obscenities at her husband, and she thinks that something's going to come of this, so she starts recording the conversation. If there's anything like that in this case, the State could have proved it up. If the defendant had a history of calling SM and bragging about hitting her or talking about it, she could have testified to that, and she didn't. Alternatively, since we know that this conversation was recorded mid-conversation, it was ongoing when the recording starts, if he had said something during that that would have given a reasonable person reason to believe that he was about to talk about this offense, she could have testified to that, and the State offered none of this evidence. So without any of this evidence, there's simply no reason for a reasonable person to believe that the recording would yield evidence of an offense, and that's true regardless of whether or not it actually did. And so, you know, for that reason, I would ask alternatively to the relevance issue, that this Court affirm the portion of the trial judge's ruling specifically referring to the recording of the conversation. Unless Your Honors have any further questions, I would ask that you affirm. I may have a question. The prayer for relief says reverse the trial court's order of April 23 and remand the cause for further proceedings. What further proceedings are you aware of that would be required for any reason? I think regardless of Your Honors' conclusion here, the trial would continue. This is the trial. That's, I assume, the State's prayer for relief. This is the State's brief, and that's the prayer for relief. So I'm asking you, and I'll ask the Assistant Appellate Prosecutor, what relief are we supposed to give? Has jeopardy attached? Yes, jeopardy is attached. So the event trial should resume regardless of how this Court rules. Thank you. Thank you. Ms. Siebert, you may proceed. May it please the Court, Counsel? Once again, this phone call is absolutely relevant. Relevancy, it's a low threshold. We have the evidence here that, you know, it did contain a confession of the defendant, you know, battering this victim. I know there's been some talk about, oh, she didn't point to a specific day or time, but she absolutely, you know, she absolutely did. She directs the defendant, she directly confronts him with the day that he most recently abused her when he cracked her jaw. I, and that was a direct reference to this particular, this particular act of domestic violence. Also, could also be, could also say it's also relevant just based on the, you know, we get to see the dynamic of the relationship between the victim and defendant. This is a domestic violence case. Propensity is usually considered. So, this is, of course, relevant. And because it's relevant, then we, of course, move on to the second step, which is whether this fear of crime exemption applied. It absolutely did. The testimony is very clear that the victim testified that she specifically asked defendant questions to get him to admit to abusing her. I noticed my defense counsel over here used the words would yield evidence of the crime. That's not the statute. It's may. This recording may obtain evidence of the crime. In the victim's mind, as she testified to, she started recording. She started asking questions. We can see that clear as day on the recording or the transcript of the recording. And then he responded to it. He didn't deny it. He acknowledged that he's abused her. Right. Right. And do you think that if this was brought in under, what is it, 115 or brought in for the history of prior domestic violences with some pretrial notice, that you'd be, it would be a little different here today? Or do you think you didn't need to do that? If it would have gone, been considered as like other crimes evidence? Yeah. That could have been a route that the state took. I can't speak to why they didn't. If they had, I don't think we would have been here today. But they thought it was more probative of this specific incident versus something as general as other crimes evidence. And what the state is, of course, trying to prove is that the defendant did commit this specific act of domestic violence. This would point, would be a better way to try to prove the burden. Right. Right. So if I, if I've heard, and I've heard your argument several times, you've repeated the point that she believed that she was going to be able to get some evidence of this crime. This, so you're saying we should determine what her belief is as opposed to what actually occurs? Because if we don't, I mean, I've read the statement. I've, you know, I've broken it down. It accomplished a lot of swear words. A lot of inappropriate, disrespectful conversation between the two of them. So, you know, you've got evidence that she doesn't like him, which could go against your particular case. But you have absolutely no evidence in this call or in this conversation that says, yeah, I broke your jaw this time. I won't use the word that he would have used. So what's, isn't the point that it needs to be in some way, again, not explosive, not, not to cause, I don't want to say, not to cause just a different look at the case. But aren't we there to prove the case that's charged? And how does this phone call in any way prove the case that's before the court? Your Honor, again, it's relevant because she, she specifically refers to this particular act of domestic violence. She confronts him about it. She does say more general terms like, oh, you beat me or you beat the mother of my child. But then she goes into specifics saying you cracked my jaw. He doesn't deny that he did this. He says, yeah, I have beat you. No, he said, she said, you said you've only laid your hands on me. And he said, only you in the past. Hell, yeah. I mean. It's to the broken jaw. He doesn't, she doesn't give any indication. He even knows what she's talking about, let alone that, yeah, I did it. I just, I go back to my point that I asked you before. Doesn't, whatever comes, whatever comes of any piece of evidence that goes in, it has to be relevant to the proceedings. And I think that was the first question Justice McLaren asked you. What is accomplished by this phone call? And you said that's not really the important thing. The important thing is she's got the right to do it. I think it is important that there has to be something accomplished by it. And if you could tell me what would be accomplished by it, I'd certainly be happy to look at that aspect of it. Your Honor, again, she does specifically refer to this abuse. He does respond to it. I don't have it in front of me right now, but I believe it was before that last two sentences she does refer to it. And that right there is why it's relevant. And, again, relevance is a low threshold. And it's a low bar to meet, and it's met in this case because she refers to that specific incident. And we can compare and contrast with the other two incidents that happened years before, and we know exactly what kind of injuries she sustained in that one. The injuries she sustained in here are unique and different. She refers to them. He doesn't deny it. He admits to beating her. That's why it's relevant. I don't have anything else. Okay. Any other questions? No. Thank you. We will take the case under advisement. There are no further cases on the call. Court is adjourned.